Duane JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–94–00693–CR.

Court of Appeals of Texas, Austin.

Oct. 16, 1996.

Robert Icenhauer–Ramirez, Linda Icenhauer–Ramirez, Icenhauer–Ramirez & Hubner, P.C., Austin, for Appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Austin, for State.

Before CARROLL, C.J., and KIDD and JOHN F. ONION, Jr., JJ.*

---

JOHN F. ONION, Jr., Justice.

This appeal is taken from a conviction for capital murder. Tex. Penal Code Ann. § 19.03(a)(2) (West 1994).[1] After the jury found appellant Duane Johnson guilty, the trial court assessed punishment at life imprisonment as the State did not seek the death penalty. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 1 (West Supp.1996).

Appellant advances two points of error concerning the admission of an extraneous offense into evidence at the guilt/innocence stage of the trial. First, appellant urges that the trial court abused its discretion in finding the extraneous offense was relevant to the contested issue of intent under Rule 404(b) of the Texas Rules of Criminal Evidence. Second, appellant contends that the trial court abused its discretion in overruling his objection to the admission of the extraneous offense based on Rule 403 of the Texas Rules of Criminal Evidence and finding that its probative value was not substantially outweighed by the danger of unfair prejudice.

The sufficiency of the evidence is not challenged. In the early morning of July 10, 1993, an individual living near the intersection of Dessau Road and Yager Lane in Travis County called 911 to report an apparent automobile accident. The lifeless body of Mark Long, age 31, was found in his 1966 Pontiac convertible. EMS personnel were unable to revive him. The autopsy revealed that the cause of death was a gunshot wound at the nape of neck, which injured the spinal column and cord, and in the opinion of the medical examiner, caused instantaneous death. A fragmented .22 caliber bullet was recovered from the body. The record reflected that Long was in Austin to visit his natural mother whom he had not seen since he was five years old.

An informer's tip led the peace officers to appellant who gave an extrajudicial written confession and led the officers to the .22

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. The current code is cited for convenience. The applicable law was that in effect at the time of

the commission of the offense. Act of April 15, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen. Laws 434 (Tex. Penal Code § 19.03(a)(2), since amended).

caliber Beretta pistol that he had used. Ballistics tests revealed that the bullet recovered from Long's body had been fired from the recovered weapon. The State introduced a redacted version of appellant's confession.[2] The confession reflected that the "day before we killed the dude in the convertible," appellant was with Antonio Wilkins, Patrick Greg Chatham, Seaton Salazar, and Ramont Taylor. They drove around most of the day in Greg's Cadillac automobile, and while driving "we were talking about how we needed money. We decided we were going to jack a car and rob someone." About 1:00 a.m. on Saturday morning, on the outskirts of Austin, they found a location suitable for their needs at the intersection of Dessau Road and Yager Lane where road construction was apparently taking place. The confession reveals the group moved some construction barricades to block the road and then placed a stop sign in the middle of the road. Appellant, Wilkins, and Salazar hid in the bushes nearby. Salazar had a BB gun, Wilkins had a shotgun, and appellant had a .22 caliber pistol. Greg Chatham and Ramont Taylor waited in the Cadillac nearby for the threesome to complete their task.

Within minutes, according to the confession, a light-colored convertible driven by a white male about thirty years of age approached the barricades and stopped. Appellant went to the left rear of the car and the other two men went to the sides of the vehicle. Salazar demanded that the driver get out of the car. The driver put the convertible in reverse and began to back up. At this point, appellant confessed that he shot at the driver and saw the "guy go down." The convertible hit a curb with a loud bang and turned in the opposite direction. Appellant stated that he and his two accomplices ran to Greg Chatham's Cadillac. They drove back to the convertible but left immediately because of oncoming traffic. Appellant learned from "the news" that the driver was dead. Appellant later learned that Wilkins had fired his shotgun at the same time appellant fired the pistol, but understood that Wilkins had aimed at the car.

2. *Russeau v. State,* 785 S.W.2d 387, 390 (Tex. Crim.App.1990), abolished the voucher rule. The State is no longer required to delete portions

The pertinent portion of the extrajudicial confession relating to the redacted portion provided:

... The car started to back off and it was about fifteen to twenty feet away when I shot at the driver. The guy was looking right at me when I shot. I only fired once and the guy went down. The guy still had his hands on the wheel and the car started moving faster in reverse. _____ [redacted portion # 1]

I've been thinking this everyday and since it's happened. I had read about how the guy that I killed came to Austin to see his mother. When I read this my eyes almost teared up. _____ [redacted portion # 2] My intent was to take the guy's wallet. I don't know if Seaton or Tony planned on stealing his car.

Immediately after the State introduced the redacted statement, appellant introduced the entire original statement. *See* Tex.R.Crim. Evid. 106, 107. This exhibit included the redacted portions as follows:

Redacted portion # 1—I didn't think that I hit him because I was aiming at the door.

Redacted portion # 2—I didn't mean to kill the guy in the convertible.

During the presentation of defense testimony, appellant called a Texas Department of Public Safety ballistics expert, William Sorrow, who had examined and test-fired the .22 caliber weapon that had inflicted the fatal wound. Sorrow testified that approximately an inch had been cut off the barrel of the pistol in question, that at a distance of fifteen feet the pistol shot three to five inches above the point of aim, and at a distance of twenty feet the pistol shot five to seven inches higher than the point of aim. Sorrow acknowledged that the pistol was a firearm and was a deadly weapon.

After both sides rested, the State, in rebuttal, called Aimee Reye to testify about an earlier extraneous offense on the basis that the issue of intent was now contested. Appellant first objected on the basis of Rule

of a defendant's statement or face the possibility of acquittal. *See* Tex.R.Crim. Evid. 607.

404(b), and when that objection was overruled, he objected on the basis of Rule 403. *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (op. on reh'g). The latter objection was also overruled and Reye was permitted to testify in rebuttal.[3]

Reye testified that, approximately two weeks prior to June 26, 1996, she was present with her boyfriend, Stephen Moreno, at appellant's house when appellant and Moreno got into a fight over a necklace that appellant was wearing which Moreno claimed belonged to Moreno's brother. After the police left the scene, appellant told Moreno that he "was going to get shot" and told Reye that if she was with Moreno she would "get shot, too." Reye revealed that in the early morning hours of June 26, 1993, she and Moreno were driving home from a movie, when a car approached from the opposite direction. Reye saw appellant rise up out of the passenger side window of the other car, aim a pistol at them over the top of the other car and begin to fire. She also saw "Tony" Wilkins aim a shotgun out of the back window of the other car and began firing. Moreno was hit in the arm with buckshot. Reye related that she and Moreno were chased but were able to elude the other car and to flag down a patrolling policeman. Later, Reye found pistol bullets in the exterior of her car and in the dash of her vehicle.

In turn, appellant called one of the prosecutors in the instant case, Frank Bryan, to testify before the jury. Bryan stated that appellant had been indicted on December 10, 1993, for aggravated assault growing out of the incident involving Aimee Reye and Stephen Moreno. Bryan related that the indictment alleged in the first count that appellant "knowingly or intentionally threatened imminent bodily injury," and in the second count that appellant "knowingly or intentionally cause[d] bodily injury to Stephen Moreno," and that the indictment did not allege appellant had the intent to kill Moreno. Bryan also testified that the pending case was now being reconsidered, however, as an attempted murder case. He explained there had

been no urgency concerning the pending case in view of the pendency and trial of the instant capital murder case. We do not find that after Bryan's testimony appellant asked for any relief or further objected to the evidence of the extraneous offense already admitted.

After both sides rested and closed at the guilt/innocence stage of the trial, the trial court submitted an instruction limiting the jury's consideration of the extraneous offense, if any, to the issue of intent and required the jury to first find beyond a reasonable doubt that appellant committed the extraneous offense.

■ With this background, we examine appellant's contentions on appeal. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Crim. Evid. 401; *Keller v. State,* 818 S.W.2d 425, 428–29 (Tex.App.—Houston [1st Dist.] 1991, pet ref'd). All relevant evidence is admissible except as otherwise provided by constitutions, statutes, or rules prescribed by statutory authority. Tex.R.Crim. Evid. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, etc. Tex.R.Crim. Evid. 403. Rule 403 favors the admissibility of relevant evidence. The presumption is that relevant evidence will be more probative than prejudicial, and in close cases, trial courts shall favor admission in keeping with this presumption. *Montgomery,* 810 S.W.2d at 377, 378; *Keller,* 818 S.W.2d at 429. Rule 404(b) provides, however:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, rea-

---

**3.** The careful trial court had earlier, out of the jury's presence, heard Reye's testimony before it

was admitted before the jury.

sonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

This rule embodies the traditional Texas rule that has approved the general principle "that an accused person is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally." *Cantrell v. State,* 731 S.W.2d 84, 88 (Tex.Crim.App. 1987); *Young v. State,* 159 Tex.Crim. 164, 261 S.W.2d 836, 837 (App.1953). This is because such evidence is inherently prejudicial and the defendant's alleged " 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged." *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Crim.App.1983); 1 Steven Goode, Olin Guy Welborn III, & M. Michael Sharlot, *Guide to The Texas Rules of Evidence: Civil and Criminal,* § 404.6.1 at 165 (Texas Practice 2d ed. 1993) (hereinafter *Goode* ). The general rule is subject to the listed exceptions in Rule 404(b), but the exceptions listed and those drawn from case law are not exclusive nor exhaustive. *Goode* at 165; *Cantrell,* 731 S.W.2d at 89.

Under former case law, it has been held that extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the prosecution *both that* the transaction is relevant to a material issue in the case and that the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Elkins,* 647 S.W.2d at 665; *see also Cantrell,* 731 S.W.2d at 89; *Plante v. State,* 692 S.W.2d 487, 491 (Tex.Crim.App. 1985). Under the former case law, this test was called the true test for the admissibility of extraneous offenses. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

■ With the advent of the Texas Rules of Criminal Evidence, some significant changes occurred in the traditional balancing process regarding the admissibility of extraneous act evidence. *See Goode* at 167. These changes are discussed in *Montgomery,* 810 S.W.2d at 386–97. Two objections, rather than one, may now be necessary to preserve error in the admission of extraneous offenses: one objection on the basis of Rule 404(b) and, if that is overruled, another objection on the basis of Rule 403. *Id.* at 388. Rule 403 has also shifted the focus somewhat from the second part of the former true test enunciated in *Williams.* The first part of the former test (relevant to a material issue in the case) is now governed by Rule 404(b). Evidence of other "crimes, wrongs, or acts" may be admissible if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. Tex.R.Crim. Evid. 404(b). A party may introduce such evidence where it logically serves to make more or less probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact, etc. *Bishop v. State,* 869 S.W.2d 342, 346 (Tex.Crim.App.1994); *Montgomery,* 810 S.W.2d at 387.

■ If a Rule 404(b) objection is made to extraneous offense evidence, the proponent of the evidence may persuade the trial court that the evidence has relevance apart from character conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity, or preparation leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing the absence of mistake or accident, etc. *Montgomery,* 810 S.W.2d at 387–88.

Appellant's first point is that the trial court erred in overruling his Rule 404(b) objection. Turning to the instant indictment, we observe that it alleged in pertinent part that on or about July 10, 1993, appellant, Ramont Taylor, and Patrick G. Chatham "in the course of attempting to commit and committing robbery of Mark Philip Long, did then and there intentionally commit murder by causing the death of an individual, Mark Philip Long shooting him with a deadly weapon, to wit: a firearm."

■ Specific intent to kill is an essential element of capital murder. Tex. Penal Code Ann. § 19.03 (West 1994). In order to convict an accused of capital murder, the State must prove and the jury must find beyond a reasonable doubt that the accused "intention-

ally committed the murder" in the course of the underlying felony. *Webb v. State,* 760 S.W.2d 263, 268 (Tex.Crim.App.1988). This is the only culpable mental state. *Demouchette v. State,* 731 S.W.2d 75, 79–80 (Tex. Crim.App.1986), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Thus, this intent was an element that the State in the instant case was required to prove beyond a reasonable doubt. "[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Cantrell,* 731 S.W.2d at 89 (quoting from *Morgan v. State,* 692 S.W.2d 877, 880 (Tex.Crim.App.1985)).

Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed. *Caro v. State,* 771 S.W.2d 610, 617 (Tex.App.—Dallas 1989, no pet.); *McGee v. State,* 725 S.W.2d 362, 364 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Intent is most clearly in issue when the defendant argues that the charged offense was unintentional or the result of an accident. *Keller,* 818 S.W.2d at 428–29. In the instant case, appellant offered parts of his confession that he did not mean to kill Long and did not think he hit Long as he was aiming at the car door. Appellant also called a ballistics expert to show the weapon shot slightly higher than the point of aim. Intent was clearly a material issue in dispute when the extraneous offense was offered. Once the defendant claims accident, mistake, lack of intent, etc., intent can no longer be inferred from other uncontested direct evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts, *Montgomery,* 810 S.W.2d at 375; *Cantrell,* 731 S.W.2d at 89, or to show violent acts where the defendant was an aggressor. *Robinson v. State,* 844 S.W.2d 925,

929 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

As noted, an extraneous offense is relevant outside of supporting an inference of character conformity if it serves to make more or less probable an elemental fact. *Montgomery,* 810 S.W.2d at 387. Questions of relevancy should be left largely to the trial court, relying on its own observations and experience, and the conviction will not be reversed absent an abuse of discretion. *Moreno v. State,* 858 S.W.2d 453, 462 (Tex. Crim.App.1993).

Although the extraneous offense was not too remote, appellant claims a lack of similarity with the offense charged or the intent involved. Although the extraneous offense was not exactly the same as the charged offense, it need only be substantially similar to be admissible. *Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App.1985).[4] When extraneous offense evidence is offered on the issue of intent, Texas courts have held that there is less need to show significant identity between the facts of the other transactions and those of the case being tried. *Goode,* § 404.6.3 at 179. The degree of similarity need not be so great as if offered to prove, say, the issue of identity. *See Bishop v. State,* 869 S.W.2d 342, 346 (Tex.Crim.App. 1994); *Morrow v. State,* 735 S.W.2d 907, 909–10 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd); *see also Plante v. State,* 692 S.W.2d 487, 491–92 (Tex.Crim.App.1985).

Both the instant offense and the extraneous offense involved violent acts by appellant, shooting at other individuals in a car with a deadly weapon in the early morning hours while accompanied by Tony Wilkens who was also shooting with a shotgun. Both involved efforts to present the escape of individuals.

Appellant relies upon *Lazcano v. State,* 836 S.W.2d 654 (Tex.App.—El Paso 1992, pet. ref'd), to support his claim that the admission of the extraneous offense was reversible error. Appellant's reliance is misplaced.

**4.** The mere fact that certain dissimilarities are present between the extraneous offense and the offense for which the accused is on trial does not make the extraneous offense inadmissible if the

accused is clearly identified and shown to be the perpetrator of the extraneous offense. *Cantrell,* 731 S.W.2d at 90 n. 1 (citing *Lewis v. State,* 674 S.W.2d 423 (Tex.App.—Dallas 1984, pet. ref'd)).

*Lazcano* is distinguishable. That cause involved the murder of a female by ligature strangulation. The State was permitted to introduce an extraneous offense where the teen-aged witness testified that some six weeks before the alleged murder she left a private party with appellant to "make-out" in a nearby tool shed. When the defendant failed to heed her requests to stop his sexual advances, the witness began to scream "rape" and appellant covered her mouth. When the witness continued to scream, the defendant began to choke her. The witness was able to coax the defendant into releasing her and they went their separate ways. The appellate court found that the trial court erred in admitting the extraneous offense under the issues of identity, motive, common plan, or intent. With regard to intent, the appellate court found that the extraneous offense testimony did not indicate any intent to kill. Unlike the instant case, there was no use of a deadly weapon in the extraneous offense. Moreover, the *Lazcano* court observed that the defendant had not apparently challenged the "intent" element of the murder indictment and that extraneous offense evidence is not admissible to prove scienter if the requisite guilty intent can be inferred from the act itself. The court noted that medical examiner's testimony and the photographic evidence illustrated the alleged ligature strangulation from which the intent to kill could be strongly inferred without the need for support by the way of evidence of an extraneous offense. In the instant case, appellant did challenge the "intent to kill" element of the capital murder by offering parts of appellant's confession inconsistent with the redacted exhibit offered by the State and by offering the testimony of a ballistics expert. With such evidence in the record, the intent to kill was not clearly inferred from the act itself. We do not deem *Lazcano* controlling or persuasive. We find that the trial court did not abuse its discretion in admitting the extraneous offense under Rule 404(b) in light of the facts and circumstances of the instant case. Moreover, an appellate court should not reverse a trial court's ruling that is within the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391; *Garcia v. State*, 827 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1992, no pet.). The first point of error is overruled.

 Once an extraneous offense is found relevant to prove an elemental fact independent of its tendency to show character conformity, a trial court must determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice provided that the opponent of the evidence timely raises a Rule 403 objection. *See Montgomery*, 810 S.W.2d at 378. Competent defense counsel here timely objected on Rule 403 grounds after the trial court's ruling on the Rule 404(b) objection. Several factors have been used to measure the probative value of an extraneous offense: (1) presence of similarity between the extraneous act or offense and the offense charged; (2) closeness in time of the extraneous transaction to the charged offense; and (3) availability of alternative sources of proof. *See Robinson v. State*, 701 S.W.2d 895, 898 (Tex.Crim.App. 1985); *Keller v. State*, 818 S.W.2d at 429–30; *Caro*, 771 S.W.2d at 618.

The similarities between the capital murder and the extraneous offense have already been noted. There are certain differences between the two, but we conclude the similarities lend substantive probative value to the extraneous transaction. Moreover, the State need not show a high degree of similarity where, as here, the purpose of the proof is to show intent. *Keller*, 818 S.W.2d at 429. In addition, there was no question of remoteness. The two offenses, separated by only two weeks, were sufficiently close in time to have provided additional probative value.

 Availability of alternative sources of proof is another factor. The material issue here was intent. Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App.1978); *Fuller v. State*, 819 S.W.2d 254, 257 (Tex.App.—Austin 1991, pet. ref'd). When examining the factor here involved, the courts will consider whether the State's evidence is circumstantial or direct. *Caro*, 771 S.W.2d at 618 (citing *Moore v. State*, 700 S.W.2d 193, 198 (Tex. Crim.App.1985), *cert denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986)). The

**304**

State's evidence as to intent originally came from appellant's redacted confession. Appellant controverted and undermined the State's proof by introducing the balance of the confession and the testimony of a ballistics expert raising a defensive theory. The ultimate issue was seriously contested and this enhanced the probative value of the complained-of evidence. Because of the circumstantial nature of the proof of the mental state and in light of this record, it does not appear that the State had other convincing evidence to establish the issue in dispute.[5]

 Turning to the question of whether the probative value of the extraneous transaction was substantially outweighed by the unfair danger of prejudice, we observe that the evidence must be unfairly prejudicial because most of the evidence offered by the prosecution to prove the elements of an offense in any criminal case will be prejudicial. In the instant case, the trial court gave a limiting instruction on the use of the extraneous transaction evidence. The nature of this evidence was not of such a nature to impair the efficacy of the limiting instructions. The State's jury argument was noninflammatory and there was little or no mention of the extraneous transaction in its argument. These matters lessened the prejudicial impact of the admission of the evidence. Given the high probative value of the evidence and its lower prejudicial effect, we conclude the trial court did not abuse its discretion in overruling the Rule 403 objection. That rule favors the admissibility of relevant evidence and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery,* 810 S.W.2d at 377, 378. The trial court also apparently applied the appropriate standard for the admissibility of extraneous transaction evidence. *See Harrell v. State,* 884 S.W.2d 154, 159 (Tex.Crim. App.1994). The second point of error is overruled.

The judgment is affirmed.

**5.** *Montgomery,* 810 S.W.2d at 392, also listed factors to be considered but these are inclusive of those discussed or are otherwise considered in our discussion. *See Taylor v. State,* 920 S.W.2d 319, 322–23 (Tex.Crim.App.1996).