TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00654-CR







Jerry Dwight Beasley, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,309, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






PER CURIAM


A jury found appellant guilty of aggravated sexual assault and assessed punishment at
imprisonment for forty years. Tex. Penal Code Ann. § 22.021 (West 1994 & Supp. 1997). By thirteen
points of error, appellant contends the district court erroneously admitted evidence of an extraneous offense
and that the evidence is legally and factually insufficient to sustain the conviction. We will affirm the district
court's judgment.

On December 31, 1995, the complainant, K.M., and her boyfriend, Don Creed, went to
Bo's Barn, a dance hall in Salado, to celebrate New Year's Eve. K.M. drank beer steadily during the
evening, then switched to champagne at midnight. After midnight, Creed became tired and told K.M. he
wanted to go home. Creed left the club after K.M. told him she wanted to stay, assuming that she would
get a ride home with one of the friends with whom they had spent the evening.

K.M.'s memory of the events following Creed's departure from Bo's Barn was spotty due
to her intoxication. She testified that she remembered leaving the dance hall in an unfamiliar vehicle and
traveling in a direction away from her residence in Florence. It was undisputed at trial that she was with
appellant in his pickup. K.M. next remembered being in a wooded area near a lake, with her blouse off
and appellant attempting to remove her bra. She managed to get out of the truck and walk into the trees. 
K.M. did not remember how much time passed before appellant found her and ordered her back into his
pickup. When she refused, appellant "slammed" her into the side of the truck and opened the door. Inside
the pickup, appellant cut a belt loop on K.M.'s jeans with a knife. He then instructed her to pull down her
pants. K.M.'s testimony continued:


 Q. What happened when you began to pull down your pants?


 A. Jerry grabbed the front of my jeans and jerked them down. Scratched the
inside of my leg and after he did that he told me to turn around and I
couldn't move.


 Q. At that point in time you knew he had a knife?


 A. Yes.


 . . .


 Q. Okay. What happened then?


 A. After that when he told me to turn around, I couldn't move. He grabbed my
left wrist and pulled my arm up behind my back and spun me around. All
I remember at that point was my chin burning across the seat cover. I had
like a carpet burn on my chin from that.


Appellant penetrated K.M. anally with his penis. K.M. testified that she "felt very helpless" and feared for
her life.

 K.M. next remembered being in Bodee's convenience store. The store clerk, John Paul
Jones, testified that K.M. entered the store between 3:00 and 4:00 a.m. on January 1. She was wearing
no shoes. She asked to use the telephone and, pursuant to store policy, Jones referred her to an outside
pay phone. K.M. reentered the store a few minutes later. She was carrying a pair of boots and a purse,
and was crying. She told Jones she had been raped and again asked to use the telephone. At K.M.'s
direction, Jones called Creed. Later, the police were also summoned. Jones testified that he saw a pickup
rapidly leave the store parking lot after K.M. entered the second time.

K.M. was examined at a hospital on the afternoon of January 2. A nurse testified that she
observed bruises and scrapes over much of K.M.'s body. The examining physician testified that she found
two recent anal tears, one of which extended into the rectum. In the doctor's opinion, these tears were
consistent with penile penetration.

Appellant testified that K.M., with whom he was acquainted, approached him at Bo's Barn
and asked for a ride home, saying her boyfriend had left her. Because K.M. indicated that she was hungry,
appellant began driving to Temple. They stopped at a Seven-Eleven convenience store to get a soft drink
and use the restroom. Appellant cut the belt loop of K.M.'s jeans with his knife when she was unable to
unfasten her belt. Appellant testified that K.M. had been kissing his neck as they drove and, after they left
the Seven-Eleven, she removed her blouse and bra. Appellant drove to a rural park near Moffat where
he and K.M. engaged in normal sexual intercourse. Appellant insisted that K.M. consented to the
intercourse, and denied that he used force or penetrated her anally. Later, as appellant was driving toward
Florence, K.M. told him she needed to use a restroom. They stopped at Bodee's and K.M. went in the
store. She returned a few minutes later, got her boots and purse, and told appellant she was going home. 
She then slammed the pickup door. Appellant drove away, leaving K.M. at the store. 


1. Extraneous offense

After appellant testified and the defense rested, the State called L.P. as a rebuttal witness. 
L.P. testified that she went to Bo's Barn on the night of October 20, 1995. She drank too much and
became ill. A friend arranged for appellant to take L.P. home. Although L.P. did not know appellant very
well, she went with him because her friend assured her "it would be okay." L.P. next remembered being
at home in her kitchen. Appellant tried to hug her, but she pushed him away and told him, "No." L.P. was
still ill and remembered vomiting in the bathroom. Her next memory was being on her bed with appellant
removing her clothes and then holding her down as he had sexual intercourse with her. L.P. testified that
she did not consent to having intercourse with appellant. When L.P. awoke the following morning,
appellant was gone. She had large bruises on both thighs. She did not report this incident to the police until
after she heard that K.M. had been sexually assaulted by appellant.

Appellant returned to the witness stand to respond to L.P.'s testimony. According to
appellant, L.P. approached him at the dance hall and asked him to take her home. She had been drinking
and may have been intoxicated, but did not appear to be ill. When they arrived at L.P.'s house, she invited
him inside. They went to the bedroom, disrobed, and had sexual intercourse. Appellant left the house
while L.P. was asleep. Appellant testified that L.P. never told him she did not want to have sexual
intercourse.

Evidence is relevant if it has any tendency to make the existence of a fact that is of
consequence to the determination of the action more or less probable than it would be without the evidence. 
Tex. R. Crim. Evid. 401. Relevant evidence is generally admissible. Tex. R. Crim. Evid. 402. Evidence
of other crimes or wrongs by the defendant, however, is not admissible if it is relevant only to prove the
character of the defendant in order to show that he acted in conformity therewith. Tex. R. Crim. Evid.
404(b). To be admissible, extraneous offense evidence must have relevance apart from mere character
conformity, that is, it must tend to establish some elemental or evidentiary fact or rebut some defensive
theory. Montgomery v. State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (opinion on rehearing);
Johnson v. State, 932 S.W.2d 296, 301 (Tex. App.--Austin 1996, pet. ref'd); Rule 404(b). Even if an
extraneous offense is relevant apart from character conformity, it may still be excluded if its relevance is
substantially outweighed by the danger of unfair prejudice. Montgomery, 810 S.W.2d at 387; Johnson,
932 S.W.2d at 303; Tex. R. Crim. Evid. 403.

Appellant objected to L.P.'s testimony as being both irrelevant apart from character
conformity and unfairly prejudicial. The district court overruled these objections and, as it stated in its
limiting instruction to the jury, admitted the extraneous offense testimony "only for the purpose of showing
intent, plan, motive, common scheme, design, knowledge, consent or lack of consent, lack of mistake,
rebuttal of a defensive theory, or impeachment." We review the district court's decision to admit the
extraneous misconduct evidence for an abuse of discretion. Montgomery, 810 S.W.2d at 390-92.

An extraneous offense is admissible to prove the culpable mental state required for the
charged offense if scienter cannot be inferred from the act itself, or if the accused presents evidence to rebut
that inference. Johnson, 932 S.W.2d at 302; Zuliani v. State, 903 S.W.2d 812, 827 (Tex. App.--Austin
1995, pet. ref'd). In a prosecution for sexual assault of an adult, the State must prove that the defendant
engaged in the conduct intentionally or knowingly without the complainant's consent. When the defensive
theory of consent is raised in a prosecution for sexual assault, the defendant necessarily disputes his intent
to engage in the alleged conduct without the complainant's consent and thereby places his intent in issue. 
Rubio v. State, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). Such intent cannot be inferred from the
mere act of intercourse with the complainant. Id. (1) 

In this cause, appellant admitted having sexual intercourse with K.M. and maintained that
she consented to the act. Although appellant denied engaging in the alleged act of anal intercourse, the jury
could have disbelieved this portion of his testimony while believing his claim that K.M. willingly participated
in the sexual activity. Thus, appellant's testimony raised the defensive theory of consent and placed his
intent in issue. Wiggins v. State, 778 S.W.2d 877, 884-85 (Tex. App.--Dallas 1989, pet. ref'd).

When the issue addressed is the defendant's intent to commit the offense charged, the
relevance of an extraneous offense derives from the doctrine of chances -- the instinctive recognition of
that logical process which eliminates the element of innocent intent by multiplying instances of the same
result until it is perceived that this element cannot explain them all. Cantrell v. State, 731 S.W.2d 84, 90
(Tex. Crim. App. 1987); Wiggins, 885 S.W.2d at 885. An unusual or abnormal element might be present
in one instance, but the more often it occurs the less likely it is to be the true explanation. Cantrell, 731
S.W.2d at 90; Wiggins, 778 S.W.2d at 885. For the doctrine of chances to apply, there must be a
similarity between the charged and extraneous offenses, since it is the improbability of a like result being
repeated by mere chance that gives the extraneous offense probative weight. Plante v. State, 692 S.W.2d
487, 492 (Tex. Crim. App. 1985). The degree of similarity required, however, is not as great when intent
is the material issue as when identity is the material issue and the extraneous offense is offered to prove
modus operandi. Cantrell, 731 S.W.2d at 90; Wiggins, 778 S.W.2d at 886.

In the cause before us, K.M. and L.P. described two similar encounters with appellant. 
Both encounters began at Bo's Barn, where the women found themselves intoxicated and in need of a ride
home. On both occasions, appellant was at Bo's Barn and offered to provide the needed transportation. 
Once alone with appellant, both women became the unwilling objects of appellant's sexual advances. 
When they resisted, appellant forced each to engage in sexual intercourse. There were, as appellant points
out, dissimilarities between the charged and extraneous offenses with respect to the location of the assault
and the nature of the sexual act. These differences do not, however, significantly lessen the relevance of
the extraneous act with respect to the issue of appellant's culpable mental state. The district court could
reasonably conclude that L.P.'s testimony tended to make the existence of appellant's guilty intent more
likely than it otherwise would have been. See Montgomery, 810 S.W.2d at 391 (test for reviewing trial
court's decision to admit evidence under rule 404(b)).

The issue of K.M.'s consent, and the corollary issue of appellant's intent to have sexual
intercourse with K.M. without her consent, was seriously contested by appellant. To decide these issues,
the jury had to weigh the reletive credibility of K.M. and appellant. Given her admitted intoxication on the
night in question, K.M.'s testimony was less complete and arguably less probative than that of most sexual
assault victims. L.P.'s testimony, while certainly damaging to appellant, was not so inflammatory as to
render a limiting instruction ineffective. The district court did not abuse its discretion by concluding that the
probative value of L.P.'s testimony outweighed the danger of unfair prejudice. See Montgomery, 810
S.W.2d at 392-93 (criteria for reviewing trial court's decision not to exclude evidence under rule 403). 

Because we find the extraneous offense testimony admissible for the reasons discussed,
we do not address the other grounds for admission relied on by the district court. Points of error one
through five are overruled.


2. Sufficiency of evidence

The indictment contained four counts, each of which alleged that appellant penetrated
K.M.'s anus with his penis. Sec. 22.021(a)(1)(A)(i). Counts one and two alleged that appellant compelled
K.M.'s submission by the use of force and violence, while counts three and four alleged that K.M. was
compelled to submit by appellant's threat to use force and violence. Tex. Penal Code Ann. §
22.011(b)(1), (2) (West Supp. 1997); Sec. 22.022(b). Counts one and three alleged that the sexual
assault was aggravated by appellant's use of a deadly weapon, the knife. Sec. 22.021(a)(2)(A)(iv). 
Counts two and four alleged that appellant placed K.M. in fear of serious bodily injury, death, and
kidnapping. Sec. 22.021(a)(2)(A)(ii). All four counts were submitted to the jury, which returned a general
verdict of guilty. The evidence is sufficient if it supports appellant's conviction on any one count. Aguirre
v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (opinion on rehearing). 

In determining the legal sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v.
State, 614 S.W.2d 155 (Tex. Crim. App. 1981). When conducting a factual sufficiency review, we do
not view the evidence in the light most favorable to the verdict. Instead, we consider all the evidence
equally, including the testimony of defense witnesses and the existence of alternative hypotheses. Orona
v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d
375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

Appellant contends the evidence is legally and factually insufficient to prove that he
compelled K.M.'s submission either by use of the knife as a deadly weapon or by placing her in fear of
serious bodily injury, death, or kidnapping. This argument fails because the State did not have that burden. 
The State alleged and was required to prove only that appellant used force or violence, or the threat of
force or violence, to compel K.M.'s submission to the sexual assault. K.M. testified that when she
attempted to flee from appellant's attack, he threw her against the side of his pickup truck and forced her
back into the vehicle. After pulling off her jeans, appellant twisted K.M.'s arm behind her back, turning
her to permit penetration. Thirty-six hours after the assault, K.M.'s body was covered by bruises and
abrasions. From this evidence, a rational trier of fact could find beyond a reasonable doubt that appellant
compelled K.M.'s submission by use of force or violence. While appellant denied using force against K.M.
and asserted that the sexual intercourse was consentual, the jury was free to reject all or any part of
appellant's testimony. Miller v. State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). A
finding that appellant used force or violence is not against the great weight and preponderance of the
evidence. The evidence is both legally and factually sufficient to prove that appellant sexually assaulted
K.M. without her consent as alleged in counts one and two.

Appellant also contends the evidence is legally and factually insufficient to prove either of
the aggravating elements. K.M. testified that appellant cut one of the belt loops on her jeans with a pocket
knife immediately before her removed her jeans and sexually assaulted her. She estimated that the knife
blade was three or four inches long, and said that she believed it was capable of causing serious bodily
injury or death. She added, "It's been my experience in the past that when somebody has a knife holding
it in their hand that you're fixing to get hurt and I was very afraid." She answered affirmatively when asked
if "fixing to get hurt" meant being caused serious bodily injury or death. From this evidence, a rational trier
of fact could find beyond a reasonable doubt that appellant used his knife in the course of the criminal
episode, that the knife, in the manner of its use, was capable of causing death or serious bodily injury, and
that appellant's conduct placed K.M. in fear of death or serious bodily injury. See Tex. Penal Code Ann.
§ 1.07(a)(17)(B) (defining "deadly weapon"). None of these findings is against the great weight and
preponderance of the evidence. The evidence is both legally and factually sufficient to prove aggravation
as alleged in counts one and two.

Because we find the evidence legally and factually sufficient to sustain appellant's conviction
under either count one or count two, it is unnecessary to determine if the evidence supports a conviction
under count three or count four. Points of error six through thirteen are overruled.

The judgment of conviction is affirmed.



Before Justices Powers, Jones and Kidd

Affirmed

Filed: June 5, 1997

Do Not Publish
1. Rubio was a prosecution for aggravated rape committed before that offense was recast as aggravated
sexual assault. The opinion also predates the adoption of the Texas Rules of Criminal Evidence. Neither
fact lessens the relevance of the opinion to the question before us. 



1981). When conducting a factual sufficiency review, we do
not view the evidence in the light most favorable to the verdict. Instead, we consider all the evidence
equally, including the testimony of defense witnesses and the existence of alternative hypotheses. Orona
v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d
375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

Appellant contends the evidence is legally and factually insufficient to prove that he
compelled K.M.'s submission either by use of the knife as a deadly weapon or by placing her in fear of
serious bodily injury, death, or kidnapping. This argument fails because the State did not have that burden. 
The State alleged and was required to prove only that appellant used force or violence, or the threat of
force or violence, to compel K.M.'s submission to the sexual assault. K.M. testified that when she
attempted to flee from appellant's attack, he threw her against