

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00464-CR

LEONEL MORALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 147th District Court
Travis County, Texas
Trial Court No. D-1-DC-11-900388, Honorable Wilford Flowers, Presiding

January 10, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Leonel Morales, appeals his conviction for the offense of aggravated sexual assault,[1] and resulting sentence of confinement for life in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Through one issue, appellant contends that the trial court committed reversible error in allowing evidence of an extraneous sexual assault to be presented to the jury. Contained within that issue, appellant also complains that, if the extraneous offense evidence was admissible, the

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i) (West Supp. 2013).

probative value of such evidence was substantially outweighed by the danger of unfair prejudice to appellant. We will address these issues in turn and affirm the judgment of the trial court.

## Factual and Procedural Background

Although appellant does not contest the sufficiency of the evidence, we will discuss those portions of the record required to resolve the issue presented. At the outset, appellant contends that the record reflects that the issue of consent was not challenged, and the only defensive theory presented by trial counsel was that appellant was guilty of only sexual assault and not aggravated sexual assault as charged in the indictment. The State contends that through the cross-examination of the victim, Amy Adams,[2] and other State's witnesses, appellant effectively challenged whether the assault was without Amy's consent.

On April 3, 2005, Amy got off work and was walking home along Cameron Road in Austin. A small gold colored Chevrolet pick-up truck approached her and stopped next to her. Appellant was the driver of the truck. Appellant got out of the truck, came to the side where Amy was standing, and forced her into the truck. After going back to the driver's side and reentering the truck, appellant drove off rapidly, running red lights en route to a heavily wooded area where he stopped the pick-up. The location of the assault was adjacent to Johnny Morris Road between Loyola Lane and U.S. Highway 290 in Austin. After Amy got out of the truck, appellant forced her to have sexual

---

[2] "Amy Adams" is a pseudonym used by the victim and we will refer to her as Amy throughout this opinion.

2

intercourse with him. Appellant then left the scene and Amy walked to her apartment where she called 911.

On the day the assault was reported, Amy visited with several police officers about the events and submitted to a sexual assault examination by a sexual assault nurse examiner (SANE). All of those that interviewed Amy that day, later prepared written reports or had written or recorded interviews with Amy. These reports and recordings provided some of the cross-examination material that trial counsel used during his examination of Amy and will be detailed later in this opinion.

In addition to the cross-examination of Amy, appellant cross-examined each of the police officers who prepared incident reports or took written or recorded statements from Amy about discrepancies between Amy's trial testimony and the incident reports and written or recorded statements. The tenor of this cross-examination was to portray Amy as someone who either did not remember the facts or was skewing the facts to support her view of the facts.

After the State had presented its evidence and Amy and several of the State's witnesses had been extensively cross-examined, the State requested that the trial court rule on the issue of whether to permit proof of appellant's extraneous offenses. The trial court then allowed the State to proffer, out of the presence of the jury, what the testimony was they proposed to present on this issue. Following a proffer and a discussion of the application of the law of extraneous offenses, the trial court ruled that it would permit the introduction of evidence of a single extraneous offense that the court found to be most similar to the offense being tried. Further, in its ruling, the trial court

stated that the evidence was allowed to show motive, common plan, or scheme to rebut the issue of consent, which the trial court found that the questioning of the State's witnesses had raised.

Subsequently, the jury heard evidence regarding the sexual assault of Martha Level.[3] Martha testified that, on the night of May 22, 2005, she was searching for her husband near the intersection of Manor and Loyola roads in Austin. She noticed a small brown pick-up truck driving around that area. The truck came by her location on at least two occasions and eventually stopped next to her. A Hispanic male then pointed a gun at her and told her to get into the truck. He then drove her to a secluded location in a wooded area on Old Manor Road in Austin, where he sexually assaulted her.

At the conclusion of the evidence in the present case, the jury convicted appellant of aggravated sexual assault and assessed his punishment at confinement in the ID-TDCJ for life.

Through a single issue, appellant claims that the admission of the extraneous offense evidence was reversible error and that, if the evidence was admissible, its probative value was substantially outweighed by the danger of unfair prejudice to the appellant. We disagree and will affirm.

---

[3] "Martha Level" is a pseudonym used by the victim in the extraneous offense case, and we will refer to the victim by that name.

Extraneous Offense Evidence

Standard of Review and Applicable Law

As an appellate court, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Davis v. State,* 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). A trial court abuses its discretion when its decision is outside the zone of reasonable disagreement. *Id.*

Relevant evidence of a person's bad character is generally not admissible for the purpose of showing that he acted in conformity therewith. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. TEX. R. EVID. 404(b);[4] *De La Paz v. State*, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009). The exceptions listed in Rule 404(b) are not intended to be mutually exclusive or exhaustive. *De La Paz*, 279 S.W.3d at 343. Further, Rule 404(b) is not intended as a rule of exclusion but is instead a rule of inclusion. *Id.* Evidence that may be admissible under Rule 404(b) may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403.

In a prosecution for a sexual assault, the State must prove that the appellant engaged in the conduct intentionally or knowingly without the victim's consent. TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i); *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd). Accordingly, lack of consent is an element of the

---

[4] Further reference to the Texas Rules of Evidence will be by reference to "Rule _____."

crime charged. Further, when the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without consent. *Martin v.* State, 173 S.W.3d 463, 467 n.1 (Tex. Crim. App. 2005).

Analysis of the Rule 404(b) Challenge

Appellant argues that the extraneous offense offered by the State proves nothing but conformity with the allegations of appellant's bad character. According to appellant, this is so because trial counsel's theory of the case went to the issue that the State could not prove the aggravating factors necessary to elevate the crime at issue from sexual assault to aggravated sexual assault. Specifically, appellant argues that the record reflects that trial counsel went to great lengths to explain that he was not contesting the issue of consent and, therefore, there was no material issue of consent before the jury. *See Robbins*, 88 S.W.3d at 261.

The State counters that, while appellant may have verbalized that he was not contesting consent as a theory of the defense, the cross-examination of Amy and other State's witnesses could easily be viewed as an attack on the issue of whether Amy consented to the intercourse that is the basis of the indictment.

An appellant's plea of not guilty does not, in and of itself, open the door to the admission of extraneous offenses. *See id. at 260.* However, when the appellant goes beyond a simple plea of not guilty, he may through vigorous cross-examination of the State's witnesses open the door for the admissibility of such extraneous offenses. *See id.* at 261*.

6

Our examination of the record before us leads to our conclusion that appellant did, in fact, open the door to the admissibility of the extraneous offense in question. This is demonstrated initially through the cross-examination of Amy. During that cross-examination, trial counsel highlighted a perceived inconsistency in the report Amy initially gave to the responding officer that she was waiting on a bus when she first encountered appellant. She had testified on direct examination that she was walking home when she initially observed appellant driving in his truck. This was then followed by extensive cross-examination about whether she talked to appellant before getting into his vehicle. Later, trial counsel had Amy demonstrate what actions appellant used to force her into the truck. From reading the cold record, one could deduce that trial counsel was trying to show how little force, if any, was used to get Amy in the truck. Trial counsel questioned her extensively about the type of locks the door of the truck had on it, specifically, whether these were manual locks or electronic locks. The testimony revealed that the truck had manual locks that could be opened by simply pulling up on them. Following this line of questioning, trial counsel inquired about what appellant did after she was in the truck. Testimony was elicited from Amy that appellant went around the back of the truck to the driver's side door instead of taking a shorter route around the front of the truck. The cross-examination then turned to the drive toward the secluded spot where the assault took place. Amy was then specifically asked whether or not, during the time she was in the truck, she tried to get out of the vehicle or do anything. This was followed up with a line of questioning regarding whether Amy had, during the drive to the secluded area, attempted to grab the steering wheel. Trial counsel asked specifically:

7

Q. Okay. But, isn't it true that you told Detective Benningfield that you tried to grab the steering wheel?

A. No.

Q. You never tried to grab the steering wheel?

A. No.

Q. Okay. Could you have told that to Officer Gordon?

A. No.

Q. So, you never told anyone that you tried to grab the steering wheel-

A. –No.

Q. – to get away?  All right.

Trial counsel then elicited testimony from Amy that appellant did not strike her, threaten her with a gun, or orally threaten her.  Later, cross-examination of Amy produced testimony that, when appellant got Amy to the spot where the assault took place, she got out of the truck before appellant got to her side of the vehicle.  Amy was also cross-examined about whether appellant told her to pull her pants down or she did so on her own.

In addition to the cross-examination of Amy, trial counsel aggressively cross-examined all responding officers and the SANE nurse.  Much of this cross-examination went to the issue of Amy's credibility.  Essentially, trial counsel seemed to portray Amy as someone who could or would not remember the facts.

While not ever challenging Amy directly regarding whether the sexual intercourse between her and appellant was consensual, the overall tenor and import of the cross-examination can, in fact, be understood to imply that she consented to the sexual

8

intercourse. That a jury might have understood this was the import of the questioning is certainly not outside the zone of reasonable disagreement. *See Davis,* 329 S.W.3d at 803. With this in mind, we are reminded that the trial court "has the best vantage from which to decide" questions of admissibility. *See Gorman v. State,* No. 03-07-00416-CR, 2008 Tex. App. LEXIS 5344, at *13 (Tex. App.—Austin July 17, 2008, no pet.) (mem. op., not designated for publication) (quoting *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). In fact, such is the reasoning behind the deference appellate court's pay to the trial court's rulings on admissibility of evidence. *See Robbins,* 88 S.W.3d at 259-60. Accordingly, we overrule appellant's issue to the contrary.

Analysis of the Rule 403 Challenge

A second part of appellant's issue contends that, even if the evidence was admissible, the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. Rule 403.

When we review a trial court's ruling regarding a Rule 403 objection, we again apply an abuse of discretion standard of review. *See Davis,* 329 S.W.3d at 803. Rule 403 requires the trial court to perform a balancing test of the factors listed in the rule. *See De La Paz*, 279 S.W.3d at 348-49. According to *De La Paz,* the factors we are to consider are:

1) How compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable--a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

9

2) The potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

3) The time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

4) The force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* (quoting *Wyatt v. State,* 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)).

A review of appellant's issue regarding the trial court's ruling attacks the potential to impress the jury in an irrational but nevertheless indelible way, factor two, and the State's need for the evidence, factor four. In an effort to be complete, we will review each of the factors in the trial court's balancing test.

Turning to the first of the factors in the balancing test, the evidence of the sexual assault of Martha was very compelling regarding the issue of consent. A review of the record reveals that the assault on Martha was carried out in much the same manner as that on Amy. The victims were in similar situations, alone on the streets late at night. Both were forced into a small pick-up truck that was described in much the same manner. Both were transported to a secluded wooded area in the same part of Austin. Appellant drove straight to the area where the assaults occurred. DNA evidence in both attacks identified appellant as the attacker. The assaults occurred within a month and a half of each other. Thus, the two assaults are very similar to each other, and this similarity makes the extraneous offense more compelling and gravitates toward support of the trial court's ruling. *See Gigliobianco v. State,* 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

Turning to the second factor, appellant contends that the extraneous offense evidence must have impressed the jury in some irrational but nevertheless indelible manner. Initially, we observe that the trial court gave a limiting instruction to the jury that limited the use of the extraneous offense evidence to show lack of consent, the issue for which the evidence was admitted. Further, the extraneous offense evidence was no more heinous a crime than the crime for which appellant was indicted, and therefore the evidence of the extraneous offense was not so inflammatory as to prevent the jury from considering it for its proper purpose. *See Taylor v. State,* 920 S.W.2d 319, 323 (Tex. Crim. App. 1996). Thus, the second factor of the balancing test supports the trial court's ruling.

The third factor of the balancing test, the time required presenting the evidence and whether this would distract the jury from its primary purpose, is not contested by appellant. The record reflects that the presentation of the extraneous offense evidence took less than a complete day in a trial that took five days total, three of which were spent on the guilt/innocence portion of the trial. We do not find that the presentation of the evidence was so time consuming as to warrant this Court overturning the ruling of the trial court.

The fourth factor of the balancing test, the need of the State for this evidence, is attacked by appellant under the theory that the State's evidence on the issue of lack of consent was strong. Such a postulation does not withstand the record before us. Appellant spent a significant amount of time on cross-examination trying to prove that Amy was not a credible person and should not be believed. As noted in the Rule 404(b) portion of this opinion, this cross-examination clearly attacked the element of consent.

11

Accordingly, the State needed the evidence to show that the sexual assault against Amy was without her consent.

After reviewing the record, the trial court's ruling, and the limiting instruction given to the jury, we find that the trial court was correct in overruling appellant's Rule 403 objection, and no abuse of discretion has been demonstrated. *See Davis,* 329 S.W.3d at 803. Therefore, the second portion of appellant's issue is overruled.

Conclusion

Having overruled appellant's issue, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Do not publish.