**Opinion issued October 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00643-CR

_____

**MARCOS ANTONIO MEJIA-CACERES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1393062**

---

## MEMORANDUM OPINION

Marcos Antonio Mejia-Caceres appeals a judgment convicting him of burglary of a habitation and committing or attempting to commit the felony of impersonating a public servant. *See* TEX. PENAL CODE ANN. § 30.02(d)(2) (West 2011); § 37.11(a) (West 2011). After a jury found him guilty, the trial court

sentenced him to 25 years in prison. In his sole issue on appeal, Mejia-Caceres contends that the trial court erred by admitting during the guilt-innocence phase of the trial evidence of a second burglary he committed immediately after the charged offense. We affirm.

## Background

At trial, Tamiko Haywood, one of the complainants, testified that she and her husband, son, and brother-in-law were staying together in a room at the Palace Inn hotel because they were in the process of moving from one apartment to another, and their new apartment was not ready yet. Around 2:00 a.m., Tamiko awoke to loud banging on the door and someone saying loudly, "Police, open up." Her brother-in-law, Troy, opened the door with Tamiko's husband Michael behind him, and two men pushed open the door and pepper sprayed, then handcuffed, Troy and Michael, and made them lie down on the floor. When Tamiko's 16-year-old son started to get out of bed, the intruders pepper sprayed him also.

Both men were wearing what appeared to Tamiko to be police uniforms, and Tamiko believed that they were police. The men demanded identification, drugs, and money, and claimed that the hotel front office had called them to report that someone in the room was "smoking [] dope." Tamiko gave them her identification, but told them that no one in the room had any drugs. The intruders stole Tamiko's phone and $1,100 that she had for moving expenses. They left

2

after about 15 minutes, with one of them saying "When the police get here, tell them Sergeant . . . said it's the wrong room."

Tamiko and her family watched the men drive away in an old red Jeep and realized that they were not truly police, so they went to the front office to report the burglary. Tamiko later called her stolen cell phone, which was answered by real police officers, who came to the hotel and brought the family to a gas station where Tamiko identified Mejia-Caceres as one of the two burglars.

Tamiko's husband, Michael, testified similarly that the two men knocked loudly on the door and said, "Open the door, police." He believed that the men were police officers when they first entered the room because they were wearing police uniforms and told him and Troy, "Get down. Police," before handcuffing them. Michael testified that Mejia-Caceres was screaming and kept demanding to know where the drugs and money were. Michael told the men that they did not have anything and begged them to leave. The other man removed Troy's and Michael's handcuffs before they left the room. When the family watched the men get into the red Jeep, Michael realized they were not police. Michael identified Mejia-Caceres as one of the intruders.

Houston Police Department Officer C. Calabro, with the police impersonation squad, testified that she investigated the case. She testified that surveillance cameras showed the two men knocking on multiple doors at the

Palace Inn until they found the room occupied by Tamiko's family. She testified that the uniforms the two men were wearing when they were apprehended had many similarities to police uniforms. On cross-examination, she admitted that many security companies have uniforms that are similar to police uniforms and that merely wearing a security company uniform does not mean that a person is impersonating a police officer.

Two witnesses at trial testified about a different burglary committed by the intruders the same evening. Abraham Proo testified that later the same night, he and his girlfriend were in the living room of his apartment when someone loudly banged on the door and screamed something about "either open up the doors . . . police officers or something like that." He looked through the peephole and saw two men in uniform. Believing the men were police and assuming they had the wrong apartment, Proo cracked the door and the men pushed it open. One of the men told Proo to get on the floor, that they had received a complaint about a lot of traffic at the apartment, and demanded drugs and money.

Mejia-Caceres locked the front door behind them, and Proo became suspicious and called for his brother-in-law, who was asleep in a bedroom with Proo's sister. Proo told the men they did not have any drugs and asked to see their badges, but they refused, at which point Proo realized that they were probably not officers. Proo told his sister to call the police, and she did. When Mejia-Caceres

4

saw Proo's sister on the phone with the police, he opened the apartment door, looked at the apartment number, and said they had made a mistake and gone to the wrong apartment. The two men then left, and Proo followed them. He was able to flag down an officer, who detained the two men at a gas station.

Nelson Lomas, Proo's brother-in-law, also testified about the Proo burglary, and his testimony was consistent with Proo's. Lomas testified that he believed the men were police officers because he heard them say, "HPD . . . get on the the ground," and that they got a call that drugs were being sold out of the apartment.

### Discussion

In his sole point of error, Mejia-Caceres contends that the trial court erred in admitting evidence of the Proo burglary.

### A.     Standard of Review

We review a trial court's ruling on admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial court's ruling can be justified on any theory of law applicable to that ruling, the ruling will not be disturbed. *De La Paz*, 279 S.W.3d at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982) ("When a trial court's ruling on the

5

admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.")).

## B.     Applicable Law

Under Texas Rule of Evidence 404(b), evidence of extraneous crimes, wrongs, or acts are not admissible at the guilt-innocence phase "to prove the character of a person in order to show action in conformity therewith" but are admissible to prove other matters, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" if the accused is given reasonable notice of the State's intent to introduce the evidence. TEX. R. EVID. 404(b).   Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

## C.     Analysis

Mejia-Caceres contends that the trial court erred in admitting evidence of the Proo burglary because it was not same transaction contextual evidence and was not admissible for any purpose under Rule 404(b).

We need not consider whether the Proo burglary constituted same transaction contextual evidence, because evidence of the Proo burglary was admissible to rebut Mejia-Caceres's defensive theory, which was that he did not intend to impersonate a police officer.   Mejia-Caceres's counsel elicited an

admission from Officer Calabro that wearing a security officer's uniform does not in itself constitute an attempt to impersonate a police officer. He elicited a similar admission from Tamiko. In closing, defense counsel argued that, although Mejia-Caceres and his partner were wearing security guard uniforms, it was merely to gain admittance to the apartment, and it "wasn't about being or pretending to be a peace officer."

Extraneous offense evidence is admissible under Rule 404(b) to show intent. *See* TEX. R. EVID. 404(b); *Rubio v. State*, 607 S.W.2d 498, 500–01 (Tex. Crim. App. 1980) ("This Court has consistently held that when a defendant raises a defensive theory of lack of intent to wrongfully engage in criminal conduct, an extraneous offense is admissible by way of rebuttal on the issue of intent."). Here the State offered evidence of the Proo burglary to rebut the defensive theory that Mejia-Caceres did not intend to impersonate a police officer. *See Moses*, 105 S.W.3d at 626. Specifically, the testimony of Proo and Lomas to the effect that the intruders (1) announced that they were police and (2) claimed to have received a tip regarding drug activity in the apartment, as they had during the commission of the charged offense, was probative because it tended to show that Mejia-Caceres's impersonation of a police officer during the commission of the charged offense

was intentional.[1]  *See* TEX. R. EVID. 404(b); *Moses*, 105 S.W.3d at 626.  We hold that evidence of the Proo burglary was admissible for this purpose, and, accordingly, the trial court did not abuse its discretion in admitting it.  *See Moses*, 105 S.W.3d at 627 (trial court does not abuse discretion in admitting extraneous offense evidence that rebuts defensive theory); *see also Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd) (when defendant raises defensive theory that charged offense was not intentional, intent is put at issue).

**Modification of Judgment**

A first-degree burglary offense as defined by Section 30.02(d)(2) of the Penal Code can be committed in one of two ways.  Either a person can commit burglary "with intent to commit" a felony other than felony theft, or a person can commit burglary having "committed or attempted to commit" a felony other than felony theft.  TEX. PENAL CODE ANN. § 30.02(d)(2).  Mejia-Caceres was convicted of burglary of a habitation and committing or attempting to commit impersonation of a public servant.  However, the judgment reflects that Mejia-Caceres was

---

[1]  The jury was correctly instructed that it could consider evidence relating to the Proo burglary only if it found beyond a reasonable doubt that Mejia-Caceres committed the Proo burglary, and even then, only for purposes of determining "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  *See* TEX. R. EVID. 105(a) (when evidence is admissible for limited purpose, trial court, upon request, shall restrict evidence "to its proper scope and instruct the jury accordingly").

convicted of the other variety of Section 30.02(d)(2) burglary, affirmatively stating that it was "burglary with intent to commit other felony."

"An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified"). Here, the indictment and the guilt-innocence jury charge reflect that Mejia-Caceres was charged with and convicted of burglary of a habitation and committing or attempting to commit the felony of impersonating a public servant. We modify the trial court's judgment to reflect that Mejia-Caceres was convicted of burglary of a habitation and committing or attempting to commit impersonation of a public servant. *See Jackson v. State*, 288 S.W.3d 60, 64 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (reforming trial court's erroneous judgment stating appellant was convicted of aggravated assault against public servant to reflect appellant was convicted of aggravated assault where record showed jury found appellant guilty of only latter offense).

## Conclusion

We modify the trial court's judgment to reflect that Mejia-Caceres was convicted of burglary of a habitation and committing or attempting to commit impersonation of a public servant, and as modified, affirm the judgment.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).