PD-1647-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 11:34:24 AM
Accepted 1/29/2015 3:37:03 PM
ABEL ACOSTA
CLERK

NO. PD-1647-14

_____

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

_____

## STEDMOND ABDULLAH, PETITIONER

## VS.

## THE STATE OF TEXAS, RESPONDENT

_____

**Direct Appeal from the 102nd District Court of Bowie County, Texas**

**Seeking Review of Opinion Issued by Texas Sixth Court of Appeals**

_____

## AMENDED PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

**Jason Horton**
**jason@jasonhortonlaw.com**
**Texas Bar No.: 24041130**

**JASON HORTON LAW FIRM**
**Post Office Box 1596**
**Texarkana, Texas  75504**
**T-903-792-2000**
**F-903-792-2100**
**www.jasonhortonlaw.com**

**ATTORNEY FOR PETITIONER**

## ORAL ARGUMENT REQUESTED

# IDENTITY OF THE PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 68.4(a), the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the Justices of this Honorable Court can evaluate whether they are disqualified to serve or should recuse themselves from participation in the decision of this case.

**Trial Court Judge:**
Bowie County 102nd Judicial District Court Judge Honorable Bobby Lockhart

**Defendant/Appellant:**
Stedmond Abdullah

**Attorneys for Defendant/Appellant at Trial:**
Will Williams
Texas Bar No. 24072804
Chad Crowl
Texas Bar No. 24072808
Bowie County Public Defender's Office
424 West Broad Street
Texarkana, Texas 75501

**Attorney for Defendant/Appellant on Appeal:**
Jason Horton
Texas Bar No. 24041130
JASON HORTON LAW FIRM
P.O. Box 1596
Texarkana, Texas 75504

**Attorneys for the State of Texas/Appellee at Trial and on Appeal:**
Bowie County Assistant District Attorney Samantha Oglesby
Texas Bar No. 24070362
Bowie County Assistant District Attorney Kelley Crisp
Texas Bar No. 24062683
601 Main Street
Texarkana, Texas 75501

# TABLE OF CONTENTS

**Page**

IDENTITY OF THE PARTIES AND COUNSEL ................................................i

TABLE OF CONTENTS ....................................................................... ii

INDEX OF AUTHORITIES ................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ....................................... 1

STATEMENT OF THE CASE .................................................................2

STATEMENT OF PROCEDURAL HISTORY .............................................. 2

STATEMENT OF FACTS ..................................................................... 2

GROUNDS FOR REVIEW ..................................................................11

> **Ground One:** The court of appeals' application of *Cantrell v. State* impermissibly expands the rationale behind this Court's decision, and, if permitted to stand, would only serve to further erode the admissibility requirements of extraneous offense evidence.

> **Ground Two:** The court of appeals misapplied existing precedent to conclude that the *admissible* evidence presented at trial sufficiently proved that an assault occurred in the course of committing a theft.

ARGUMENT AND AUTHORITIES ................................................................11

PRAYER .........................................................................................17

CERTIFICATE OF COMPLIANCE ............................................................ 18

CERTIFICATE OF SERVICE..................................................................18

APPENDIX (Opinion of the Texas Sixth Court of Appeals)

# INDEX OF AUTHORITIES

**CASES**                                                                                     **Page**

*Abdullah v. State*, 06-13-00257, __S.W.3d __, 2014 WL 6450482
(Tex. App.—Texarkana 2014) ...............................................10,11,12,13,14

*Cantrell v. State*, 731 S.W.2d 84
(Tex.Crim.App. 1987) .......................................................................11,12,13

*Clayton v. State*, 235 S.W.3d 772
(Tex.Crim.App. 2007) ................................................................................15

*Cooper v. State*, 67 S.W.3d 221
(Tex.Crim.App. 2002) ...........................................................................14,17

*Johnson v. State*, 541 S.W.2d 185
(Tex.Crim.App. 1976) ................................................................................16

*Sorrells v. State*, 343 S.W.3d 152
(Tex.Crim.App. 2011) ................................................................................11

*Whitfield v. State*, 14-11-00847-CR, __S.W.3d__, 2012 WL 5208542
(Tex.App.—Houston [14th Dist.] 2012) ......................................................16


**STATUTES and RULES**

Texas Penal Code § 29.03 .........................................................................11

# NO. PD-1647-14

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

ABDULLAH STEDMOND                                    PETITIONER

VS.

THE STATE OF TEXAS                                    RESPONDENT

## AMENDED PETITION FOR DISCRETIONARY REVIEW

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Comes now the Petitioner, Stedmond Abdullah, by and through his attorney, Jason Horton, and respectfully urges this Court to grant discretionary review in the above-named cause pursuant to the Texas Rules of Appellate Procedure.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument. Petitioner was sentenced to forty-five years in prison. Oral argument would substantially assist this Court in determining any unresolved factual and/or procedural issues, as well as permit Petitioner's counsel the opportunity to respond to questions the Court may have regarding the consequences of Petitioner's requested relief.

## STATEMENT OF THE CASE

Petitioner was tried to a Bowie County jury and convicted of one count of aggravated robbery, receiving a sentence of forty-five years in prison. On direct appeal, Petitioner contended that the trial court committed reversible error by admitting extraneous offense evidence and permitting improper closing argument. Petitioner also contended that the evidence was insufficient to establish a nexus between the alleged assault and theft, which was required to sustain an aggravated robbery conviction. The court of appeals affirmed Petitioner's conviction, and Petitioner now petitions this Court for review of the court of appeals' decision.

## STATEMENT OF PROCEDURAL HISTORY

On November 18, 2014, the court of appeals affirmed Petitioner's conviction in a memorandum opinion not designated for publication. *See* Appendix. Petitioner did not file a motion for rehearing. Petitioner sought, and obtained, an extension to file this petition, making this petition due on or before January 19, 2015.

## STATEMENT OF FACTS

### A. The Charged Offense

On June 28, 2012, as Danielle Boone was unlocking the front door to her house, an unknown black male appeared on her front porch and said "Hey." When she looked in his direction, she saw a silver and black pistol in his hand. With her six-

year-old daughter in tow, Danielle scurried to get inside her house and locked the deadbolt before the black male could gain entry. (5 RR 73-74) Danielle took her daughter into the bathroom and called 911. (5 RR 75)

State's Record Exhibit 8 was the video from the responding police officer's dashcam. A rare find in most criminal cases, the officer's body microphone recorded Danielle as she gave an immediate account of what had just transpired. Danielle told the officers that she had never seen the black male before; she gave a general description; and she told the officers that the suspect only said "Hey" when he approached. Danielle informed the officers that her purse was still in her car, but her wallet was missing.

Even though the suspect had a pistol in his hand, the tone of Danielle's voice gives the impression that the suspect said "Hey" in a non-threatening manner. Danielle did not say the suspect pointed the pistol *at* her. This might explain why the officers are recorded saying, "I mean, I could see the gun placing [Danielle] in fear or whatever, but [the suspect] didn't request money so it is more like a Deadly Conduct / Burglary of a Vehicle Charge." *See* State's Record Exhibit 8.

At some point after the incident, Danielle described the unknown black male to her friend LaTraye Johnson. Danielle and Johnson got on Facebook and reviewed a few profile photos before coming to Stedmond Antwine's Facebook page. As they

weren't Facebook "friends" with Antwine, they could only see his profile picture. Nevertheless, the suspect's distinct facial features led Danielle to believe that Antwine was her assailant. (4 RR 6-9)

Armed with this information, Danielle traveled to the Bi-State Justice Building to give another statement to law enforcement. Her entire interview was recorded and admitted as part of State's Record Exhibit 8. Danielle, again, initially said the suspect was pulling a gun and/or raising his arm when she looked over at him.

A lineup was prepared that included a person who law enforcement knew went by the name Stedmond Antwine. After Danielle said "maybe" to lineup picture number 2, Danielle unequivocally and immediately said "yes" when she saw lineup picture number 4. Danielle said she was 1000% (one thousand percent) sure that number 4 was her assailant. Number 4 was Petitioner, Stedmond Abdullah. *See* State's Record Exhibit 8.

After she positively identified Petitioner, Danielle questions the officer as to why Petitioner was only being charged with burglary of a vehicle when Petitioner had a gun and placed her and her daughter in such fear. Danielle was afraid because whoever had her wallet knew who she was and where she lived. The officer said that he would look through the statutes and determine whether the offense could be upgraded. Danielle then, for the first time, modified her story and said Petitioner

4

pointed the gun *at* her. *See* Chapter 3-4 of State's Record Exhibit 8. It is undisputed that the initial offense report indicated the assailant did not point the gun at Danielle. (5 RR 48) Nevertheless, after Danielle positively identified Petitioner as her assailant, Detective Will Scott upgraded the charge from burglary of a vehicle to aggravated robbery. (5 RR 55)

The State conceded that the only evidence tying Petitioner to the crime was Danielle's identification. (2 RR 7) Danielle provided the only evidence that something was stolen from her car. (5 RR 54) Petitioner did not make any demand for money. (5 RR 54) No physical evidence tied Petitioner to the theft of Danielle's wallet. (5 RR 60)

B.     The Extraneous Arkansas Robbery

Two days after Danielle called 911, another robbery was reported at the Ambassador Inn in Texarkana, Arkansas. According to Google Maps, the traveling distance between Danielle's house (1922 W. 13th Street, Texarkana, Texas) and the Ambassador Inn (200 Realtor Avenue, Texarkana, Arkansas) ranges from 4.6 miles to 6.0 miles.

Texarkana Arkansas Police Department (TAPD) Officer Edward Chattaway responded to the Ambassador Inn robbery call. Chattaway made contact with Petitioner while searching for the suspect. Petitioner initially fled on foot, but he was

5

quickly apprehended carrying a black and silver pistol. (5 RR 139-143) Outside the presence of the jury, TAPD Detective Shane Kirkland testified that the victim of the Ambassador Inn robbery, Travis Burnett, made a positive, in-person identification of Petitioner as his assailant. (5 RR 100-101)

While Petitioner was in custody, TAPD Detective Wayne Easley interviewed Petitioner regarding his involvement in the Ambassador Inn robbery. (5 RR 144) Portions of the interview were played for the jury. (5 RR 149) Petitioner admitted that he made contact with Burnett at the Ambassador Inn, but Petitioner told Easley that he did not rob anyone. Petitioner said that he asked Burnett for a cigarette, and Burnett gave Petitioner money after Burnett saw Petitioner's gun sticking out of his pocket. *See* State's Exhibit 13.

Burnett was not called as a witness at trial. There was never a hearing conducted whereby the State obtained a ruling that Burnett was "unavailable" to testify. Rather, the State argued to the trial court as follows:

> However, the issue here in regard to us not having the victim, we do not have the victim from the Arkansas robbery. He was a truck driver. Through great effort, we have been unable to locate him…
> (5 RR 92)

Petitioner's trial counsel objected to the introduction of the Arkansas robbery on multiple grounds. (5 RR 34-44, 88-97, 105-121) Ultimately, the trial court overruled Petitioner's objections and permitted the jury to hear about the Arkansas

6

robbery for purposes of proving Petitioner's identity and intent to commit theft of Danielle's property. (5 RR 121) According to the trial court:

> …But the parallels I see between the two are that he acts alone, he approaches people entering buildings, which, to me, is not how – you know, when I think about two robberies, you know, I think about E-Z Marts and banks. So that is a little significant. Again, the fact it was a black and silver pistol, may or may not be the same one. They're similar in time, two days apart. Both occur at night, and he was arrested at the scene on the Arkansas side. And he was ID'd by the victim on the Texas side. So I'm going to let you get into it, but we're going to keep it very, very narrowly on just what the police officers – and I think Will is right, I don't want – you can't get into anything about what the victim told them. (5 RR 116)

C. The Trial

While on the witness stand, Danielle made a dramatic positive identification of Petitioner as her assailant. (5 RR 80) The jury then heard much detail about the extraneous Ambassador Inn robbery from Detective Kirkland. (5 RR 122-129) After the jury recessed for lunch, the trial court heard argument from counsel regarding the admission of Petitioner's recorded custodial interrogation performed after the Ambassador Inn robbery. Despite Petitioner's trial counsel's efforts, the trial court ruled that the video could be played for the jury as long as victim identification information was redacted. (5 RR 137)

The State's final two witnesses testified solely about the extraneous Ambassador Inn robbery. The State rested after Petitioner's custodial interrogation

7

was played for the jury. (5 RR 149, 155) Petitioner lodged his motion for directed verdict, arguing that the State produced no evidence of theft or attempted theft to support a conviction for aggravated robbery. (5 RR 162) The motion was denied. (5 RR 163)

During closing argument, Petitioner's trial counsel made specific reference to the State not calling the alleged victim of the extraneous Ambassador Inn robbery as a witness. (5 RR 179) The following transpired during the State's final argument:

STATE: …And the thing I am absolutely entitled to do in this portion of my argument is to answer anything that he brought up. He directly brought up to you that we didn't produce a victim over from Arkansas. I am now allowed to answer that question for you because he has misled you. That victim –

PETITIONER: Objection, Your Honor. May we approach?

STATE: He said it.

PETITIONER: They can't get into any facts that are not in evidence.

STATE: You brought it up, and I get to answer it –

PETITIONER: It doesn't matter –

THE COURT: Hold on a minute. One at a time. She can only type one of you talking at a time.

PETITIONER: She's going to have to take the witness stand and be

8

sworn in if she's going to offer evidence.

STATE: No. How this works is, you cannot bring it up. You cannot leave it out there. If I know the answer, I can now answer –

THE COURT: What were you saying?

STATE: That he's not available to testify. He brought it up. He cannot create an impression knowing that we know the answer and –

PETITIONER: They don't know the answer, Your Honor. I don't know the answer because they didn't bring him here.

STATE: This is rebuttal. He brought it up.

THE COURT: I wouldn't touch on it very hard, Kelley.

STATE: Okay. But I can say that he's unavailable.

THE COURT: Bring it to a pretty quick conclusion. Overruled, Will.

(OPEN COURT, DEFENDANT AND JURY PRESENT)

STATE: Okay. The witness is unavailable to testify. He's not available. I would love for him to be in here. He's not available to testify, and I will leave it at that. (5 RR 182-183)

\* \* \*

After 30 minutes of deliberation, the jury had the following question: "Is the intent to commit robbery applicable to this charge?" (5 RR 187-188) After being

9

instructed to refer to the court's charge, the jury deliberated another 16 minutes before finding Petitioner guilty of aggravated robbery. (5 RR 189)

On direct appeal, Petitioner raised the following three issues:

(1) The trial court erred by permitting the introduction of the extraneous Ambassador Inn robbery because the facts of the charged offense and the extraneous offense were not sufficiently similar, nor did the facts show a pattern of conduct distinctive enough to constitute a "signature."

(2) The evidence was insufficient to establish (1) a nexus between the assault and the theft; or (2) that the assault occurred in the course of committing theft.

(3) The trial court committed reversible error by permitting the State to inform the jury, during final closing remarks, that the alleged victim of the extraneous offense was "unavailable" to testify when the record contained no evidence of his unavailability.

The court of appeals affirmed Petitioner's conviction and sentence in an unpublished memorandum opinion issued on November 18, 2014, finding (1) that the evidence was legally sufficient to support Petitioner's conviction, (2) that the extraneous offense was admissible for the purpose of showing intent to commit theft, and (3) that the State's reference to the alleged Arkansas victim's unavailability in response to Petitioner's comments about the alleged Arkansas victim's absence was harmless. *Abdullah v. State*, No. 06-13-00257-CR (Tex.App.—Texarkana, November 18, 2014, n.w.h.) (not designated for publication).

10

## GROUNDS FOR REVIEW

**Ground One:** The court of appeals' application of *Cantrell v. State* impermissibly expands the rationale behind this Court's decision, and, if permitted to stand, would only serve to further erode the admissibility requirements of extraneous offense evidence.

**Ground Two:** The court of appeals misapplied existing precedent to conclude that the *admissible* evidence presented at trial sufficiently proved that an assault occurred in the course of committing a theft.

## ARGUMENT AND AUTHORITIES

### Ground One

The focus of Petitioner's trial centered on the State's ability to prove Petitioner committed an assault in the course of committing a theft. Danielle testified that she was 1000% sure that Petitioner was the person who approached her with a gun and said, "Hey." Because Petitioner never demanded money, or anything else for that matter, the State had to prove that "in the course of committing theft…, and with an intent to obtain or maintain control of property, [Petitioner] intentionally or knowingly threatened or placed [Danielle] in fear of imminent bodily injury or death." *Abdullah* at p.4, *citing Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.Crim.App. 2011) *and* Tex. Penal Code Ann. § 29.03(a)(2).

11

To prove this required nexus, the State introduced evidence of an extraneous robbery. The jury, obviously concerned with this issue, posed the following question during deliberations: "Is the intent to commit robbery applicable to this charge?" (5 RR 187-188)

Relying on *Cantrell v. State*, the court of appeals concluded that the extraneous robbery was admissible to show Petitioner's intent because the common characteristics between the charged offense and the extraneous offense were sufficiently similar. *Abdullah* at p.10. In *Cantrell*, the extraneous offense and the charged offense were both (1) aggravated robberies, (2) committed at private residences, (3) committed at approximately the same time in the morning, and (4) "were committed at gunpoint shortly after the victim had awaken[ed] or was getting ready to go to work…" *Id.*; *citing Cantrell*, 731 S.W.2d 84, 90 (Tex.Crim.App. 1987).

The court of appeals concluded that the similarities in Petitioner's case were "of greater quality than those relied on in *Cantrell*," without making note of one important distinction - the victim of the extraneous offense was present and testified at trial in *Cantrell*. Here, despite "great efforts," the State did not call the victim of the extraneous offense to testify at Petitioner's trial. The entire extraneous offense was proven-up, over objection, by law enforcement officers and portions of Petitioner's

12

recorded custodial interrogation.

In *Cantrell*, it was clearly shown during the trial of the charged offense that the defendant brandished a knife and demanded money. That is an aggravated robbery. Even though the defendant's intent could have been inferred by his actions, the defendant contested the issue of intent at trial, which caused the State to call another one of the defendant's victims to testify that the defendant pointed a pistol at her and took her jewelry, gifts, cash, and other items and then stole her automobile. *Abdullah* at p.9; *citing Cantrell* at p.88-89. Two victims testified about two separate, but similar, crimes. That was the crux of this Court's rationale in *Cantrell*.

Here, Petitioner did not demand anything from Danielle; he simply said "hey." Unlike the defendant in *Cantrell*, Petitioner's intent could not be inferred from his actions. Also unlike *Cantrell*, the State did not call the alleged victim of the extraneous robbery as a trial witness, so two victims did not testify about two separate, but similar, crimes.

The court of appeals' reliance on *Cantrell* impermissibly expands the *Cantrell* rationale, and, if permitted to stand, would only serve to further erode the admissibility requirements of extraneous offense evidence. Without the inadmissible extraneous offense evidence, the State could not have met its burden of proving the elements of aggravated robbery. Just as one of the responding officers said

immediately after the incident, "I mean, I could see the gun placing [Danielle] in fear or whatever, but [the suspect] didn't request money so it is more like a Deadly Conduct / Burglary of a Vehicle Charge." *See* State's Record Exhibit 8.

## Ground Two

The court of appeals correctly cited *Cooper v. State* for the proposition that, if the theft was a mere afterthought to the completed offense of assault, the evidence would be insufficient to show that the assault occurred in the course of committing theft. *Abdullah* at p.5; *citing Cooper v. State*, 67 S.W.3d 221, 224 (Tex.Crim.App. 2002) (Keasler, J, concurring). According to the majority of this Court in *Cooper*, "[t]he general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." 67 S.W.3d 221, 224 (Tex.Crim.App. 2002). However, according to the two concurring justices, "[i]n a robbery case, the State still must prove that the theft occurred 'in the course of' the assault. The defendant must form the intent to commit the theft either before or during the assault." *Id.* at 225. The four dissenting justices also made note that, "…proof of an assault followed by a theft without a showing that the assault was committed with the intent of facilitating the theft is not enough to sustain a robbery conviction." *Id.* at 228.

Here, there was no evidence that Petitioner actually committed theft. Danielle

14

provided the only evidence that something was stolen from her car, and she did not see Petitioner take anything. (5 RR 54) No physical evidence tied Petitioner to the theft of Danielle's wallet. (5 RR 60) Petitioner did not attempt to use Danielle's debit or credit cards prior to Danielle cancelling them. The only evidence of theft was Danielle's testimony that her wallet was in her car when she and her daughter went into the house, and her wallet was not in her car when the police arrived to investigate the charged offense. This evidence was insufficient to sustain an aggravated robbery conviction.

Even if there is no evidence of the actual commission of a theft, an aggravated robbery conviction can be sustained by proof that Appellant attempted to commit theft. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). According to an unpublished Houston court of appeals opinion, the following evidence supports an inference that a defendant attempted to commit theft:

> …(1) appellant and his cohort approached the store when it was closed and there were no other nearby open businesses, both wearing dark-colored clothing, hats, masks, and gloves; (2) appellant had an empty bag and a handgun with him; (3) appellant purposefully brandished his loaded handgun at the store employees; (4) he and his cohort ordered the employee outside the store to stay on the ground and then ordered him to get up; (5) appellant attempted to open the front door of the store and pointed his loaded handgun at the employee inside the store; (6) appellant and his cohort fled the scene when they realized that the employee inside the store had a gun; (7) appellant acted suspiciously when he saw a patrol car by slowing from a run to a walk, discarding his

15

> hat, gloves, mask, empty bag, and gun; and (8) he initially refused to stop when ordered to do so by Gustafson. From this evidence, the jury could reasonably have inferred that appellant's conduct occurred "in the course of committing theft."

*Whitfield v. State*, No. 14-11-00847-CR, 2012 WL 5208542, *2 (Tex.App.—Houston [14th Dist.] 2012).

Here, unlike the defendant in *Whitfield*, Petitioner was not wearing a mask or gloves when he approached Danielle on her porch. Petitioner did not have an empty bag to place money in, nor did Danielle's initial statement indicate Petitioner pointed the gun *at* her. Petitioner did not request money or make any other demands or order Danielle to do anything; Petitioner simply said "hey." While it is understood that a specific verbal command is not the talisman of an intent to steal, intent must nonetheless be rationally inferred from the evidence presented. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex.Crim.App. 1976). Simply saying "hey" while brandishing a firearm is insufficient to create such an inference.

Even though Petitioner never demanded anything from Danielle, the court of appeals concluded that a theft occurred based solely on Danielle's testimony that her wallet was missing after her encounter with Petitioner. Other than the inadmissible extraneous offense evidence described above, the State offered nothing to prove that Petitioner formed an intent to commit theft either before or during an assault. Even though a theft occurring immediately after an assault will support an inference that the

16

assault was intended to facilitate the theft, a correct application of the *Cooper* analysis to the facts of Petitioner's case should yield a result contrary to that reached by the court of appeals.

## **PRAYER**

**WHEREFORE**, Petitioner Stedmond Abdullah prays that the Court of Criminal Appeals grant this Petition for Discretionary Review and reverse the decision of the court of appeals, thereby rendering a verdict of acquittal. In the alternative, Petitioner prays that this Court will reverse the court of appeals and remand his case to the trial court for a new trial.

Respectfully submitted,

JASON HORTON LAW FIRM
114 West Broad Street
Texarkana, Texas 75501
*Mail To:*
Post Office Box 1596
Texarkana, Texas 75504
T-903-792-2000
F-903-792-2100

BY: /s/ Jason Horton
Jason Horton
jason@jasonhortonlaw.com
Texas Bar No. 24041130

ATTORNEY FOR PETITIONER

## CERTIFICATE OF COMPLIANCE

I certify that this document was prepared with Microsoft Word, and that, according to that program's word-count function, the sections covered by Tex. R. App. P. 9.4(i) contain 3,399 words.

/s/ Jason Horton
Jason Horton

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been electronically forwarded to the following listed persons this 23rd day of January, 2015:

Mr. Jerry Rochelle
Bowie County District Attorney
601 Main Street
Texarkana, Texas  75501

State Prosecuting Attorney
P.O. Box 13046
Austin, Texas  78711

/s/ Jason Horton
Jason Horton



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00257-CR

_____

STEDMOND ABDULLAH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F0013-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Danielle Boone's seven-year-old daughter planned to spend a happy summer night at her grandmother's house. The child and her mother packed the child's belongings and headed to a local gas station. Boone realized that she had forgotten to pack her daughter's dolls and drove home to retrieve them. The car doors were left unlocked as Boone and her daughter approached the house. Boone was in the process of unlocking her front door when she heard someone step on her porch and say, "[H]ey." When she turned around, Boone saw an unmasked African-American male pointing a silver and black pistol in her direction.

Boone, who was scared for her life, began screaming but was not paralyzed by her fear. In an instant, she managed to unlock the front door, get inside, and usher her daughter inside to safety. The man lurched at the door and attempted to open it, but Boone was able to turn the door's deadbolt. She ran to the back of the house, released her dog through the back door to scare the perpetrator, and called the police. When Texarkana, Texas, police officers arrived, Boone exited her house, noticed that her car door was slightly ajar and discovered that her wallet had been stolen.

Two days later, the police arrested Stedmond Abdullah in Texarkana, Arkansas, in connection with another aggravated robbery. Abdullah was carrying a silver and black pistol at the time of his arrest. When presented with a photographic line-up, Boone identified Abdullah as the person who pointed a gun at her and her daughter. At trial, Boone also made an in-court identification of Abdullah as the perpetrator and testified that the gun retrieved during

Abdullah's Arkansas arrest looked like the gun that had been pointed at her. Abdullah was convicted by a jury of aggravated robbery and was sentenced to forty-five years' imprisonment.

On appeal, Abdullah argues (1) that the evidence is legally insufficient to show (a) that the aggravated assault occurred in the course of committing theft or (b) that a theft occurred, as alleged in the State's indictment, (2) that the trial court erred in admitting evidence of the extraneous Arkansas aggravated robbery, and (3) that the trial court erred by allowing the State to inform the jury that the victim of the Arkansas aggravated robbery was unavailable to testify when the record contained no evidence of unavailability as that term is used in Rule 804 of the Texas Rules of Evidence. We find (1) that the evidence was legally sufficient to support Abdullah's conviction, (2) that the extraneous offense was admissible for the purpose of showing intent to commit theft, and (3) that the State's reference to the victim's unavailability in response to Abdullah's comments about the Arkansas victim's absence was harmless. Consequently, we affirm the trial court's judgment.

## I. The Evidence Was Legally Sufficient to Support Abdullah's Conviction

Abdullah challenges the legal sufficiency of the evidence. In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found aggravated robbery beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323

3

S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Here, the State alleged that Abdullah,

> while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[d] Danielle Boone in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a gun[.]

Thus, "[t]o prove the essential elements of aggravated robbery in this case, the State had to show that [Abdullah] committed robbery as defined in Section 29.02 of the Penal Code, and used or exhibited a deadly weapon." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (citing TEX. PENAL CODE ANN. § 29.03(a)(2)). To show that Abdullah committed robbery, the State had to prove that "in the course of committing theft as defined in Chapter 31 of the Penal Code and with intent to obtain or maintain control of the property, [Abdullah] intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death." *Id*. (citing TEX. PENAL CODE ANN. § 29.02(a)(2)). "A person commits theft under Chapter 31 if he

4

unlawfully appropriates property with intent to deprive the owner of the property." *Id*. at 156 (citing TEX. PENAL CODE ANN. § 31.03(a)).

"The phrase 'in the course of committing theft' is defined by Section 29.01 of the Penal Code to mean 'conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.'" *Id*. at 155–56 (citing TEX. PENAL CODE ANN. § 29.01(1)). Thus, if the theft was a mere afterthought to the completed offense of assault, the evidence would be insufficient to show that the assault occurred in the course of committing theft. *See Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002) (Keasler, J, concurring) (citing *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992) (en banc)). Emphasizing that Abdullah did not demand money from Boone and that Boone did not find the wallet missing until after the assault, Abdullah challenges the element of intent. He also argues that the evidence was insufficient to show that a theft occurred because there was no physical evidence tying him to the missing wallet.

Boone had just returned from the gas station where she used her wallet. She placed her wallet in the passenger seat of the car prior to returning home to retrieve the dolls. Boone testified that she discovered that her wallet was missing as soon as the police responded to her call. "The general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Id.* "The question remaining is whether, and under what circumstances, evidence of a motive other than theft can negate the natural inference that arises when a theft immediately follows an assault." *Id.* At trial, there was no evidence of any motive other than theft.

5

"The State has always been able to prove robbery by force or threats committed before the theft or attempted theft." *Sorrells*, 343 S.W.3d at 158. Based on Boone's testimony that the wallet was missing immediately after the assault, a rational juror could draw a reasonable inference that the assault and the theft occurred as integral parts of a continuous, single episode, and thus the assault was committed during the commission of theft. *See id*. Here, we find that the evidence in this case is sufficient to support an inference that (1) a theft occurred, and (2) the assault was committed in the course of the commission of the theft. Therefore, we overrule Abdullah's first point of error.

## II.    The Extraneous Arkansas Offense Was Admissible to Show Intent

Over objection, the State introduced an extraneous offense through testimony of three Texarkana, Arkansas, police officers. Officer Shane Kirkland testified that he responded to an aggravated robbery at the Ambassador Inn motel and spoke with the victim, Travis Burnett. While canvassing the area for the suspect, Officer Edward Chattaway spotted Abdullah fleeing on foot and apprehended him. Abdullah was carrying a silver and black pistol. Officer Wayne Easley testified that he interviewed Abdullah about the aggravated robbery at the Ambassador Inn. Easley's testimony and the audio/video recording of the interview, which was played for the jury, showed that Abdullah (1) admitted to approaching Burnett and asking him for a cigarette, (2) stated that his gun would have been visible to Burnett, and (3) admitted to taking money from Burnett. During the interview, Abdullah claimed that he only wanted to "bum" a cigarette from Burnett. According to Abdullah, Burnett must have gotten scared when he saw

6

the gun and thought to appease Abdullah by giving him money even though Abdullah did not ask him for money. Abdullah argues that admission of this evidence constituted reversible error.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent . . . [and] identity . . . ." TEX. R. EVID. 404(b). Abdullah continuously objected to the introduction of the Arkansas offense. In response, the State argued that it was offering the Arkansas offense for the purpose of proving intent to commit theft, and to show identity. After discussing that matter at length outside of the jury's presence, the trial court admitted the extraneous offense for the limited purpose of determining both identity and intent. On appeal, Abdullah argues that the trial court's ruling violated Rule 404(b) "because the facts of the charged offense and the extraneous offense were not sufficiently similar."

"We review a trial court's ruling under the Rules of Evidence for an abuse of discretion." *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). "We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement." *Id*. "If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision." *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). "We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling." *Id*.; *see State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Here, the State offered the Arkansas offense to show intent to commit theft. "Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous

7

offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed." *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd) (citing *Caro v. State*, 771 S.W.2d 610, 617 (Tex. App.—Dallas 1989, no pet.); *McGee v. State*, 725 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no pet.)). At trial, Abdullah questioned Boone and responding officer, Will Scott, on whether Abdullah had made any demand for money, and emphasized that the theft occurred, if at all, after the assault. On appeal, Abdullah challenges the legal sufficiency of the evidence supporting the intent element. Clearly, intent to commit theft was (and is) a contested issue.[1]

The case of *Cantrell v. State* sheds light on whether the extraneous offense was admissible to show intent. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). We examine the facts of the charged offense in that case, the facts of the extraneous offense, and the court's reasoning and ruling. Cantrell's girlfriend, Phyllis Galyean, had a sexual relationship with Phillip Green, the victim of the offense. *Id*. at 86. Galyean told Cantrell that Green had raped her. *Id*. At 9:00 a.m., when Green was getting ready for work, Cantrell and Galyean went to Green's Dallas apartment, rang the doorbell, and forcefully entered the apartment after Green cracked open the door. *Id*. at 86. Cantrell drew a .38 caliber snub-nosed revolver and pushed Green into a chair. *Id*. Cantrell tucked the gun back into his belt after Green denied Galyean's accusations, but drew a knife and demanded money from Green. *Id*. After Green claimed that he had no cash, Cantrell forced Green to write a $5,000.00 check made payable to Galyean, took

---

[1] During deliberation, the jury asked, "[I]s the intent to commit robbery applicable to this charge . . . ?"

the check, and left. *Id*. During Galyean's cross-examination, she testified that the purpose in going to Green's apartment "'was to get to the truth of the matter and talk to Phil Green about it'" and that neither she nor Cantrell had any intention to rob Green. *Id*. at 88.

In rebuttal, the State offered, over objection, testimony from Sherry Tinerella about an incident that occurred eight months after Green was robbed. Tinerella, who lived in Houston, testified that she awoke at about 8:30 a.m. to find Cantrell, whom she did not know, pointing a pistol at her. *Id*. Cantrell took Tinerella's jewelry, gifts, cash, and other items and then stole her automobile. *Id*.

On appeal, Cantrell argued that the trial court erred in admitting the extraneous offense involving Tinerella. The Texas Court of Criminal Appeals disagreed. Because the State's indictment required it to prove that Cantrell used or exhibited a deadly weapon and threated Green with the intent to obtain and maintain control of Green's property and deprive him of the property, the court found that intent to commit theft was a material issue in the case. *Id*. at 89. It reasoned, "[e]ven if it can be argued in the instant case that [Cantrell]'s intent can be inferred from the act of obtaining a check . . . the issue of intent was later contested by Galyean's testimony . . . ," and thus, the extraneous offense was admissible to show intent. *Id*.

The court recognized the requirements of similarity or signature in cases involving the issue of identity or absence of mistake or accident.[2] However, it wrote, "the degree of similarity

---

[2]"When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005) (quoting *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992)). "Such extraneous offense evidence is admissible to prove identity when the common characteristics of each

required is not so great where intent is the material issue as when identity is the material issue, and extraneous offenses are offered to prove modus operandi." *Id*. at 90. Because the extraneous offense and the charged offense were both (1) aggravated robberies, (2) committed at private residences, (3) committed at approximately the same time of the morning, and (4) "were committed at gunpoint shortly after the victim had awaken[ed] or was getting ready to go to work," the court found "sufficient common similar characteristics between the offenses" in spite of remoteness in time and other differences between the two offenses. *Id*.

Here, the trial court made an assessment of the similarities between the charged offense and the extraneous offenses based on arguments of counsel and testimony given by Kirkland outside of the jury's presence. The trial court reasoned that

> the parallels I see between the two are that he acts alone, he approaches people entering buildings, . . . [s]o that was a little significant. Again, the fact it was a black and silver pistol, may or may not be the same one. They're similar in time, two days apart. Both occur at night, and he was arrested near the scene on the Arkansas side. And he was ID'd by the victim on the Texas side.

The similarities discussed by the trial court in this case are of greater quality than those relied on in *Cantrell*. Keeping in mind the rule that the degree of similarity between the charged offense and the extraneous offense need not be so great in cases where the State seeks to admit the extraneous offense to show intent as opposed to identity, we cannot say that the trial court abused its discretion in admitting the Arkansas offense for the purpose of showing intent to commit theft. *Cantrell*, 731 S.W.2d at 90; *Brown v. State*, 96 S.W.3d 508, 512–13 (Tex. App.— Austin 2002, no pet.) (citing *Wiggins v. State*, 778 S.W.2d 877, 886 (Tex. App.—Dallas 1989,

offense are so unusual as to act as the defendant's 'signature.'" *Id*. "The signature must be apparent from a comparison of the circumstances in both cases." *Id*.

10

pet. ref'd)); *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd); *Birl v. State*, 763 S.W.2d 860, 861 (Tex. App.—Texarkana 1988, no pet.). Therefore, we overrule Abdullah's second point of error.[3]

## III. State's Reference to "Unavailable" Victim During Closing Argument Was Harmless

The State issued a subpoena for Burnett. Yet, despite expending "great effort," the State was unable to locate him. It explained that Burnett was a truck driver who was staying at the Ambassador Inn for the night while passing through Texarkana. During closing argument, Abdullah argued,

> [Y]ou heard some evidence about something that happened in Arkansas, but you know what you didn't hear? You didn't hear anybody take the stand and say, he stole my money, he held me up. Not one person took the stand and said he robbed me in Arkansas. Some police said they arrested him for something in Arkansas, but you didn't hear from a single person in Arkansas that said he stole their money.

Either party may comment upon the failure of his adversary to call available competent witnesses. *Patterson v. State*, 387 S.W.2d 390, 391 (Tex. Crim. App. 1965); *see Fant-Caughman v. State*, 61 S.W.3d 25, 30 (Tex. App.—Amarillo 2001, pet. ref'd). We interpret Abdullah's jury argument as a comment on the State's failure to call Burnett.

The State's response to Abdullah's argument prompted the following discussion:

> [BY THE STATE]: . . . . He directly brought up to you that we didn't produce a victim over from Arkansas. I am now allowed to answer that question for you because he has misled you. That victim --

> [BY DEFENSE COUNSEL]: Objection, Your Honor. May we approach?

---

[3]Because we are to uphold a trial court's admission of evidence if it is correct under any theory of law applicable to the case, we need not address Abdullah's argument that the trial court erred in admitting the Arkansas offense for the purpose of showing identity. *See Bowley*, 310 S.W.3d at 434.

11

. . . .

(AT THE BENCH, ON THE RECORD)

[BY DEFENSE COUNSEL]: They can't get into any facts that are not in evidence.

. . . .

[BY THE STATE]: This is rebuttal. He brought it up.

THE COURT: I wouldn't touch on it very hard . . . .

[BY THE STATE]: Okay. But I can say that he's unavailable.

THE COURT: Bring it to a pretty quick conclusion. Overruled . . . .

(OPEN COURT, DEFENDANT AND JURY PRESENT)

[BY THE STATE]: Okay. The witness is unavailable to testify. He's not available. I would love for him to be in here. He's not available to testify, and I will leave it at that.[4]

Permissible jury argument falls into one of four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). On appeal, Abdullah argues that the trial court erred in allowing the State to inform the jury that Burnett was unavailable because (1) the State's argument did not fall into the permissible categories of jury argument, (2) there was no evidence that Burnett was unavailable under Rule 804 of the Texas

---

[4]For the purposes of this analysis, we assume that the trial court's ruling adequately preserved Abdullah's specific complaint related to the use of the term unavailable.

12

Rules of Evidence, (3) no ruling on unavailability had been secured by the State, and (4) the argument that Burnett was unavailable constituted an argument outside of the record.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

We agree that the record fails to show that Burnett was unavailable as the term is defined by Rule 804 of the Texas Rules of Evidence.[5] However, Abdullah's reliance on that Rule is

---

[5]Rule 804, titled "Hearsay Exceptions; Declarant Unavailable," reads,

"Unavailability as a witness" includes situations in which the declarant:

(1)     is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

(2)     persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

(3)     testifies to a lack of memory of the subject matter of the declarant's statement;

(4)     is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5)     is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means.

A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrong-doing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

TEX. R. EVID. 804.

13

misplaced in the context of this case. Rule 804 simply sets forth an exception to the hearsay rule when the declarant is unavailable as a witness.

Permissible jury argument includes an answer to the argument of opposing counsel. *Brown*, 270 S.W.3d at 570. Abdullah's jury argument was a comment on the State's failure to call Burnett. "The failure to produce available evidence justifies an inference that it would be unfavorable to the party who failed to procure it." *Albiar v. State*, 739 S.W.2d 360, 363 (Tex. Crim. App. 1987). Thus, the State was entitled to respond to Abdullah's argument.[6] However, the question remains whether the State was entitled to respond by informing the jury that Burnett was unavailable.

Even if we were to conclude that the trial court erred in allowing the State to inform the jury that Burnett was unavailable, we find that the error was harmless. Nonconstitutional error is analyzed under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires that error be disregarded unless it affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc); *George v. State*, 117 S.W.3d 285, 289 (Tex. App.—Texarkana 2003, pet. ref'd). A substantial right is not affected if the reviewing court has a "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (quoting *Johnson v.* State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998))).

---

[6]A prosecutor may comment in jury argument on the defendant's failure to call a material witness when it is shown that such witness was available to testify, and the prosecutor may also argue that the reason for such failure is that any testimony by the absent witness would have been unfavorable to the defense. *Albiar*, 739 S.W.2d 360. The mere fact that the witness was under subpoena from the State does not make him unavailable to the defense. *Id.* at 363; *see* TEX. CODE CRIM. PROC. ANN. art. 24.03 (West 2009).

14

When analyzing the likelihood that the improper jury argument had a substantial influence on the outcome of the case, we look to the record as a whole and consider (1) the severity of the misconduct or prejudicial effect, (2) any curative measures taken, and (3) the certainty of conviction or punishment assessed absent the misconduct. *Mosley*, 983 S.W.2d at 259–60; *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

The members of the jury were likely not trained on the legal definition of unavailability as it is set forth in Rule 804. Accordingly, the jury probably interpreted the State's argument as simply informing them that Burnett was not accessible or obtainable[7]—a deduction that it should have reasonably made since Burnett's testimony would have been favorable to one party, but he was not produced by either party. Yet, even if the State's comment was characterized as mildly inappropriate and no curative measure was taken, the evidence of Abdullah's intent to steal Boone's wallet—the main contested fact issue—was strong. Thus, we conclude that the State's reference to Burnett's unavailability had little or no effect. We overrule Abdullah's last point of error.

---

[7]The common definition of "available" is "present or ready for immediate use" or "ACCESSIBLE, OBTAINABLE." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 84 (11th ed. 2006).

## IV.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:    October 14, 2014
Date Decided:    November 18, 2014

Do Not Publish

16